IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LAURENCE BARKER,

      Plaintiff,

v.                                                                                                                  Civ. No. 23-332 SCY/DLM

GR INVESTMENT GROUP LLC,
GUSTAV RENNY aka
GUSTAV ZURAK and Jane Does 1-5,

      Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTIONS TO DISMISS AND
PARTIALLY RESCINDING SEPTEMBER 14, 2023 ORDER**

      Plaintiff's complaint alleges that Defendants—GR Investment Group LLC, a Florida company; and Gustav Renny, an individual residing in Florida—engaged in illegal telemarketing robocalls to Plaintiff in violation of the New Mexico Unfair Practices Act ("UPA") and the federal Telephone Consumer Protection Act ("TCPA"). Doc. 1. Defendant GR Investment Group LLC ("GR") filed its Motion to Dismiss on June 19, 2023 (Doc. 6) and Defendant Gustav Renny ("Renny") filed his Motion to Dismiss on June 26, 2023 (Doc. 13). The motions contend that the Court lacks personal jurisdiction over Defendants because Defendants do not make robocalls, have never made robocalls, never made any calls to Plaintiff's cellphone in New Mexico, and did not authorize any third parties to do so. Doc. 6 at 8-9; Doc. 12 at 9. In response, Plaintiff argues that he has evidence showing that Defendants do make robocalls and that he has met his burden to establish personal jurisdiction. Docs. 12 & 15. The Court held a motions hearing on November 15, 2023. Doc. 31.

      The Court denies both Defendants' motions to dismiss because Plaintiff has made a prima facie connection between Defendants and the robocall he received to his phone in New

Mexico.

## I.   Standard Of Review

There are two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction is not an issue in this case; Plaintiff relies on specific jurisdiction. Doc. 12 at 5. "[A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). "First we consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* at 1276-77 (internal quotation marks omitted). Defendants only challenge the first step and do not make arguments related to the second step.

As it relates to this first step, "[i]n determining whether a defendant has established sufficient minimum contacts with the forum state, we examine whether the defendant 'purposefully availed itself of the privilege of conducting activities within the forum State.'" *Id.* at 1277 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (alterations omitted). "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Id.* (internal quotation marks omitted). The plaintiff "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (cleaned up). The specific

jurisdiction inquiry does not always require "proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." *id.* at 1026. "A different State's courts may yet have jurisdiction, because of another activity or occurrence involving the defendant that takes place in the State." *Id.* (cleaned up).

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). "In the preliminary stages of litigation, however, the plaintiff's burden is light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Prior to trial, "when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Behagen*, 744 F.2d at 73. The plaintiff "need not . . . establish personal jurisdiction by a preponderance of the evidence" at this stage. *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 73. "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*; *see also AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) ("When evaluating the prima facie case, the court is bound to resolve all factual disputes in favor of the plaintiff in determining whether he has made the requisite showing.").

## II.     Partial Recission Of September 14, 2023 Order

On September 14, 2023, the Court gave the parties notice that it would convert the motions to dismiss into motions for summary judgment. Doc. 25. The Court reasoned that, if the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under a summary judgment standard. Doc. 25 at 2-3 (citing *Pringle v. United States*, 208 F.3d

1220, 1223 (10th Cir. 2000); and *Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002)). In doing so, however, the Court relied on case law that pertains to motions to dismiss for lack of subject-matter jurisdiction. *Id.* at 2-3. The Court now observes that *Sizova* and *Pringle* may not apply to motions to dismiss for lack of personal jurisdiction. The Tenth Circuit's published decisions on personal jurisdiction apply the "prima facie" standard at this pretrial stage of the case where the district court does not hold an evidentiary hearing, even when a determination on personal jurisdiction overlaps with the merits. *E.g.*, *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (under a prima facie case standard, construing a contract to exist and to supply part of the minimum contacts for a breach of contract claim, where the defendant claimed "he has never seen the Agreement, much less signed it").

Further, neither party argues that the pending motions to dismiss should be converted to motions for summary judgment and neither party objects to the Court rescinding the portion of its September 14, 2023 Order that converted the motions to dismiss to motions for summary judgment. Specifically, the parties agreed at the motions hearing that whether the motions are treated as Rule 12(b)(2) or summary judgment motions does not affect the outcome—either way, the Court must review the evidence and determine whether Plaintiff has made a prima facie case for personal jurisdiction. That is, the Court need not convert the motions to dismiss into motions for summary judgment to consider materials outside the pleadings. The parties have had notice that the Court will consider materials outside the pleadings and have had the opportunity to submit any additional materials deemed relevant. The Court therefore rescinds the portion of its September 14 Order that converted Defendants' motions to dismiss into motions for summary judgment. As explained below, the portion of that Order pertaining to jurisdictional discovery is

not rescinded.

### III. Plaintiff's Motion For Additional Jurisdictional Discovery Is Denied As Moot.

In responding to Defendants' motions to dismiss, Plaintiff noted "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues." Doc. 12 at 6; Doc. 15 at 6. This generic statement of law falls short of a clear, actual request for jurisdictional discovery prior to a decision on the motion. The ambiguity of this assertion prompted the Court in its September 14 Order to allow Plaintiff to file a motion for jurisdictional discovery. The Court ordered that the motion "must clearly set forth the discovery sought and its relevance to Defendants' jurisdictional arguments. It must explain which pertinent facts bearing on the question of jurisdiction are controverted or explain how a more satisfactory showing of the facts is necessary." Doc. 25 at 4.

At the November 15, 2023 motion hearing, Plaintiff's counsel explained he did not read this order as inviting Plaintiff to file a motion for jurisdictional discovery and so at the hearing he orally moved for additional jurisdictional discovery. Given Plaintiff's counsel misunderstanding, the Court reviews the language in its September 14 Order. After providing Defendants the opportunity to file a supplemental brief to which Plaintiff could respond, the Court wrote:

> Alternatively, if Plaintiff contends that jurisdictional discovery is necessary before resolving this issue, rather than filing a supplemental response brief, Plaintiff may file a motion for jurisdictional discovery. The motion must clearly set forth the discovery sought and its relevance to Defendants' jurisdictional arguments. It must explain which pertinent facts bearing on the question of jurisdiction are controverted or explain how a more satisfactory showing of the facts is necessary.

Doc. 25 at 4. The Court acknowledges that, even though it used the word "Alternatively" at the beginning of this paragraph to indicate Plaintiff had the option of filing a motion for jurisdictional discovery regardless of whether either Defendant filed a supplemental brief, the clause "rather than filing a supplemental response brief" could be read as conditioning both of

Plaintiff's choices (responding to Defendants' supplemental brief or requesting additional discovery) on Defendants filing a supplemental brief. Nonetheless, because the Court resolves Defendants' motions to dismiss for lack of personal jurisdiction in Plaintiff's favor based on evidence Plaintiff submitted without additional discovery, any motion Plaintiff has made for additional jurisdictional discovery is now moot and denied as moot.

## IV.     Gustav Renny's Motion To Dismiss Is Denied.

Renny's motion to dismiss contends that he never made robocalls to Plaintiff in New Mexico and lacks the minimum contacts with New Mexico necessary to subject him to jurisdiction there. Doc. 13. The affidavit attached in support avers that Renny does not reside in New Mexico, does not own property in New Mexico, does not conduct business in New Mexico, has never contracted with New Mexico residents, has no continuous and systemic contacts with New Mexico, has never been to New Mexico, does not own a New Mexico bank account, and has never committed a tort in New Mexico. Doc. 13-1 ¶¶ 4-10. It also states:

> I did not make any telephone calls to Plaintiff's cellular telephone number, which alleged calls form the basis for Plaintiff's claims set forth in the Complaint ("Subject Calls"). Furthermore, I did not have any role in making the Subject Calls, I did not direct anyone to make the Subject Calls and I did not have knowledge that the Subject Calls were allegedly being made.

*Id.* ¶ 18. Renny therefore argues this Court lacks personal jurisdiction over him because he has no contacts with New Mexico and did not engage in the behavior alleged in the complaint. Doc. 13 at 9-10.

In response, Plaintiff argues that the evidence shows that Renny was connected with robocalls made to Plaintiff in New Mexico. Plaintiff verifies the relevant paragraphs of the complaint in an affidavit, Doc. 12-2, where he swears to the truth of those paragraphs which describe Plaintiff's experiences receiving robocalls. Compl. ¶¶ 30 (first sentence), 34, 37-39, 43, 52-54, and 56. In particular, Plaintiff received a call on April 1, 2022 soliciting Vehicle Service

6

Contracts ("VSC"), which Plaintiff decided to purchase. Compl. ¶¶ 38, 43. During the call, Plaintiff was required to "verify" and "confirm" his purchase by complying with two text messages sent during the call. Compl. ¶ 43. Plaintiff verifies under oath that "true copies of the text messages I received during the telephone solicitation on 4/1/22 itself, are attached to the Complaint," but states that neither his bank nor credit account was charged on April 1. Doc. 12-1 at 1.

The text messages instructed Plaintiff to confirm his purchase by clicking on a link located on the domain www.vsc-confirmation.com. Doc. 1 at 15-16. Plaintiff submits a verified affidavit from a business records custodian with attached documents showing that the www.vsc-confirmation.com domain was registered under Gustav Renny's name, with an address in Florida, as of February 8, 2021 through the date of the custodian affidavit, July 11, 2022—that is, including April 1, 2022. Doc. 9-1.

Plaintiff also cites the deposition of Trevor Smith, CEO of Carguard Administration Inc. Doc. 15 at 1 (citing Doc. 12-1). Smith testified he met personally with Renny in October 2020 and declined a business proposal related to administering Vehicle Service Contracts. Doc. 12-1 at 5-6 (Smith Dep. at 16:23-17:8, and 18:6-19:20). Smith testified he declined the opportunity because he understood these contracts would be generated by illegal robocalling. *Id.*

Plaintiff does not argue direct liability; that is, that Renny himself placed the April 1, 2022 robocall. Instead, Plaintiff argues that

> the text-messages are ample evidence Zurak acquiesces in the conduct of the callers and wants them to do what they do: they act together in concert to make and promote sales. The text-messages are manifestations to the callers (Zurak's agents) as well as to Plaintiff: the callers know what Defendants will do if a sale is made. The callers have access to Zurak's internal operating systems to provide information necessary to make sales. Zurak made manifestations of assent to his robo-dialers by giving them "access to detailed information regarding the nature and pricing of the seller's products and services".

7

Doc. 15 at 12.

"A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018).[1] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Childress v. Liberty Mut. Ins. Co.*, No. 17cv1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (quoting Restatement (Third) of Agency, § 1.01 (2006)). "To plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff must allege *some* facts regarding the relationship between an alleged principal and agent and cannot simply allege general control in a vacuum." *Id.* (quoting *Melito v. Am. Eagle Outfitters, Inc.*, No. 14cv2440, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015)) (internal alterations omitted) (emphasis in original).

Renny invokes these principles to argue that Plaintiff has not sufficiently pled an agency relationship; that is, Plaintiff has not established that Renny directed or controlled an agent in making robocalls. Given Plaintiff's "light burden" of establishing personal jurisdiction at this stage of the litigation, however, Renny's argument fails.

At this stage of the litigation, Plaintiff must only establish a prima facie case of personal jurisdiction. The prima facie case of minimum contacts is established by activity directed to residents of the forum state. *Ford Motor Co.*, 141 S. Ct. at 1025-26. And, to the extent Renny's sworn testimony conflicts with the sworn testimony Plaintiff presents, the Court must take as

---

[1] Plaintiff's argument does not differentiate between his causes of action under TCPA and the New Mexico UPA. Doc. 12 at 7. The Court, therefore, does not separately analyze these statutes.

8

true the sworn testimony Plaintiff presents. *See Behagen*, 744 F.2d at 73 ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.").

Here, taking Plaintiff's testimony as true, Plaintiff received a robocall directed to his phone in New Mexico. During the call, the caller sent Plaintiff two text messages containing links to a website whose domain is registered to Gustav Renny. Plaintiff also cites the deposition of Trevor Smith, the CEO of a vehicle service contract company (Carguard) who testified that Renny approached him about selling vehicle service contracts for Carguard, that he personally met with Renny, and that he declined to do business with Renny because he came away from that meeting with the understanding that Renny intended to generate vehicle service contract sales for Carguard through the use of robocalls. Doc. 12-1 at 6 (Smith Dep. at 18:6-19:20). The witness also testified that Renny threatened to sell vehicle service contracts for one of Carguard's competitors if Renny's company did not reach a deal with Carguard. Doc. 12-1 at 6 (Smith Dep. at 19:5-11). It is after this meeting (in October 2020), in which Renny's company did not reach a deal with Carguard, that Plaintiff received the robocall (on April 1, 2022) made in an effort to sell him a vehicle service contract through the use of a website it appears Renny registered and for which Renny is listed as the technical, administrative, and billing contact (Doc. 9-1 at 3). This is enough to show a prima facie connection between Renny and the vehicle service contract robocall solicitation Plaintiff received to his phone in New Mexico.

**V.      GR Investment Group's Motion to Dismiss Is Denied.**

GR moves to dismiss the claims against it for lack of personal jurisdiction on the same basis as Renny's motion to dismiss. GR's motion alleges that:

- GR has never conducted business operations of any kind in the State of New Mexico.

9

- GR does not have, and has not ever had, any continuing and systematic contacts with the State of New Mexico.

- GR does not make any outbound calls, utilize an automatic telephone dialing system ("ATDS"), and has not authorized or permitted any other parties to utilize an ATDS on its behalf.

- GR does not make outbound calls, utilize a predictive dialing system, or authorized or permitted any other parties to utilize a predictive dialing system on its behalf.

- GR does not make outbound calls, robocalls or use pre-recorded voice messages, nor has GR authorized or permitted any other parties to make robocalls or use pre-recorded voice messages on its behalf.

- GR did not make any telephone calls to Plaintiff's cellular telephone, which alleged calls form the basis for Plaintiff's claims set forth in the Complaint. Furthermore, GR did not have any role in making the Subject Calls, did not direct anyone else to make the Subject Calls, and does not have knowledge that the Subject Calls were allegedly being made. See Exhibit "A".

Doc. 6 at 3-4. However, there was no Exhibit A attached to the motion. *See generally* Doc. 6.[2]

The Court informed GR this exhibit was missing from the record, and provided GR an opportunity to cure this defect, but GR did not do so. Doc. 25 at 3 n.2. Without the affidavit attached as an exhibit, the above allegations are simply unsupported statements in a legal brief. The Court therefore examines the allegations in the complaint, which "must be taken as true [because] they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 73.

> The complaint alleges:
>
> Renny has created a network of inter-related companies and/or people all dominated and controlled by him/her, and designed so that different companies or persons can be used by Renny to perform distinct tasks required to be conducted for the sale by telemarketing of various residential, personal or household products and services. These tasks include for example without limitation finding vendors and other fulfillment services, accounting billing and payment processing, claims administration, lead-generation, compilation and distribution of lead lists, recruiting and training telemarketers and compensating the marketers. GR [is] among this group of companies and/or persons inter-related by

---

[2] Furthermore, Gustav Renny's affidavit contains no allegations about GR, much less what GR did or did not do with respect to New Mexico.

10

>common ownership and/or control, who were Renny's agents he used to commit the acts and omissions complained of by Plaintiff as set forth below.

Compl. ¶ 12. Most allegations in the complaint pertain to both "Defendants" without differentiating Renny and GR's role, but paragraph 45 does allege that Renny operated the website www.vscconfirmation.com "through" GR. Compl. ¶ 45. The Court must accept these allegations as true because GR did not submit affidavits or other evidence of its own to counter these allegations. *Cf. Behagen*, 744 F.2d at 73. Further, Plaintiff provided evidence that the company under which Renny registered the domain of www.vscconfirmation.com is "GR Investment Group, LLC." Doc. 9-1 at 3. Based on Plaintiff's allegations and evidence, the Court finds that Plaintiff has made a prima facie case that GR was involved in robocalling a New Mexico resident at a New Mexico phone number and, accordingly, had minimum contacts with New Mexico sufficient to establish personal jurisdiction.

## CONCLUSION

The Court RESCINDS its September 14, 2023 Order converting these motions into motions for summary judgment and resolves them as motions to dismiss under Rule 12(b)(2). The Court DENIES Defendant GR Investment Group LLC's Motion to Dismiss, filed June 19, 2023 (Doc. 6), and Defendant Gustav Renny's Motion to Dismiss, filed June 26, 2023 (Doc. 13).

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE